# In the United States Court of Appeals for the Eighth Circuit

3M COMPANY & SUBSIDIARIES,

*Appellant,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Appellee.*

On Appeal From The United States Tax Court
No. 5816-13 – 160 T.C. No. 3

**APPELLANT'S SUPPLEMENTAL BRIEF**

Jonathan C. Bond
Saul Mezei
Jeff Liu
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
JBond@gibsondunn.com

*Counsel for Appellant*
 *3M Company & Subsidiaries*

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................1

ARGUMENT ....................................................................5

    I.    *LOPER BRIGHT* ELIMINATES THE TAX COURT
           PLURALITY'S BASIS FOR UPHOLDING THE IRS'S
           SECTION 482 ALLOCATION HERE ............................5

        A.    *Loper Bright* Overrules *Chevron* And Its
               Corollaries ....................................................5

        B.    The Tax Court Plurality's Ruling Rests
               Entirely On The Now-Overruled Doctrine Of
               *Chevron* Deference .........................................9

        C.    The IRS's Responses Effectively Concede That
               *Loper Bright* Vitiates The Tax Court
               Plurality's Rationale .....................................13

        D.    The IRS's Proposed Carveout Of Legal Issues
               From APA Review Is Baseless...................15

    II.   *OHIO* CONFIRMS THAT THE BLOCKED-INCOME RULE
           VIOLATES THE APA ..............................................18

         A.    *Ohio* Reaffirms The APA's Requirements That
                An Agency Itself Articulate A Reasoned
                Explanation For Its Action And Respond To
                Significant Comments...................................19

        B.    *Ohio* Repudiates The IRS's And Tax Court
               Plurality's Key Premises In Defending The
               Blocked-Income Rule's Validity Under The
               APA..........................................................21

        C.    The IRS's Attempt To Carve Out Legal Issues
               From The APA's Reasoned-Explanation
               Requirement Is Baseless............................26

i

III. *MOORE* HAS NO BEARING ON THE BLOCKED-INCOME QUESTION PRESENTED IN THIS CASE ...................................... 27

CONCLUSION ........................................................................................... 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Agostini* v. *Felton*,
521 U.S. 203 (1997) ................................................................ 29

*American Federation of Government Employees, AFL-CIO, Local 1738* v. *FLRA*,
806 F.2d 1105 (D.C. Cir. 1986) .......................................... 16

*Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) ............................................................ 2, 5

*Commissioner* v. *First Security Bank of Utah, N.A.*,
405 U.S. 394 (1972) .............................................. 1, 9, 10, 30

*CSI Aviation Services, Inc.* v. *Department of Transportation*,
637 F.3d 408 (D.C. Cir. 2011) ............................................ 16

*Edward J. DeBartolo Corp.* v. *Florida Gulf Coast Building & Construction Trades Council*,
485 U.S. 568 (1988) .............................................................. 32

*Heiner* v. *Mellon*,
304 U.S. 271 (1938) .............................................................. 30

*Loper Bright Enterprises* v. *Raimondo*,
144 S. Ct. 2244 (2024) ..................... 1, 2, 5, 6, 7, 8, 9, 10, 12, 17, 18, 33

*Marbury* v. *Madison*,
5 U.S. (1 Cranch) 137 (1803) ................................................ 6

*MikLin Enterprises, Inc.* v. *NLRB*,
861 F.3d 812 (8th Cir. 2017) .............................................. 12

*Moore* v. *United States*,
144 S. Ct. 1680 (2024) ........................... 4, 27, 28, 29, 30, 31

iii

*Motor Vehicle Manufacturers Ass'n of the United States, Inc.*
    v. *State Farm Mutual Automobile Insurance Co.*,
    463 U.S. 29 (1983) .................................................................. 1

*National Cable & Telecommunications Ass'n* v. *Brand X*
    *Internet Services*,
    545 U.S. 967 (2005) ............................................................. 5, 9

*Ohio* v. *EPA*,
    144 S. Ct. 2040 (2024) ...................... 1, 3, 19, 20, 21, 22, 23, 24, 25, 26

*Prill* v. *NLRB*,
    755 F.2d 941 (D.C. Cir. 1985) ............................................. 17

*Procter & Gamble Co.* v. *Commissioner*,
    961 F.2d 1255 (6th Cir. 1992) ............................................. 13

*SEC* v. *Chenery Corp.*,
    318 U.S. 80 (1943) .......................................................... 1, 22

*Skidmore* v. *Swift & Co.*,
    323 U.S. 134 (1944) ............................................................ 13

*Stewart* v. *Norcold, Inc.*,
    24 F.4th 1183 (8th Cir. 2022) ............................................. 15

*Texaco, Inc.* v. *Commissioner*,
    98 F.3d 825 (5th Cir. 1996) ................................................. 13

*United States* v. *Basye*,
    410 U.S. 441 (1973) ............................................................ 30

*United States* v. *Home Concrete & Supply, LLC*,
    566 U.S. 478 (2012) ............................................................ 12

*Verizon* v. *FCC*,
    740 F.3d 623 (D.C. Cir. 2014) ............................................. 16

*Williams Natural Gas Co.* v. *FERC*,
    943 F.2d 1320 (D.C. Cir. 1991) ........................................... 17

Appellate Case: 23-3772    Page: 5    Date Filed: 10/03/2024 Entry ID: 5442748

## Statutes

5 U.S.C. § 551 ................................................................................ 2

5 U.S.C. § 701 ................................................................................ 2

5 U.S.C. § 706(2)(A) ..................................................................... 6

26 U.S.C. § 482 .............................................................................. 32

42 U.S.C. § 7401 ........................................................................... 19

## Regulations

87 Fed. Reg. 20,036 (Apr. 6, 2022) ........................................... 26

Appellate Case: 23-3772    Page: 6    Date Filed: 10/03/2024 Entry ID: 5442748

# INTRODUCTION

The Supreme Court's recent decisions confirm that reversal is warranted and make the resolution of this appeal still more straightforward. Supreme Court precedent already answered both questions presented. Its decision in *Commissioner* v. *First Security Bank of Utah, N.A.*, 405 U.S. 394 (1972), forecloses the only substantive ground the Internal Revenue Service (IRS) asserted in support of its allocation and the Tax Court plurality adopted: that 26 U.S.C. § 482 permits treating as a taxpayer's "income" (*ibid.*) payments never made to the taxpayer by an affiliate because they were legally prohibited. And a long line of decisions, from *SEC* v. *Chenery Corp.*, 318 U.S. 80 (1943), to *Motor Vehicle Manufacturers Ass'n of the United States, Inc.* v. *State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983), and beyond, make clear that Treasury was required to articulate on the record its own rationale for its rule and to respond to significant concerns commenters raised—duties Treasury did not discharge but instead disavowed. The Court's decisions last Term in *Loper Bright Enterprises* v. *Raimondo*, 144 S. Ct. 2244 (2024), and *Ohio* v. *EPA*, 144 S. Ct. 2040 (2024), put both conclusions beyond dispute and repudiate the IRS's and Tax Court plurality's contrary position.

*Loper Bright* eliminates the IRS's and Tax Court plurality's sole basis for concluding that, notwithstanding *First Security*, the IRS could allocate as "income" to 3M payments that were illegal. The IRS and plurality maintained that deference under *Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), empowered Treasury to supersede a Supreme Court decision settling the statute's meaning. That conclusion was never correct, but it is untenable today because *Loper Bright* expressly "overruled" *Chevron* deference altogether. 144 S. Ct. at 2273. *Loper Bright* makes clear that courts must read statutes to mean what they say—as *First Security* did in construing Section 482—and cannot elevate an agency's contrary view over the best reading of the statute determined by the court. Indeed, the IRS now disavows any claim to deference. This Court must simply apply *First Security* and conclude, as both circuits to reach the issue concluded, that it bars the IRS from allocating as "income" under Section 482 payments forbidden by law.

*Ohio* ends any debate on the blocked-income rule's procedural invalidity under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*, 701 *et seq.*, and refutes the IRS's and Tax Court plurality's proffered reasons for excusing Treasury's refusal to follow the APA here. Treasury

2

offered no rationale for the blocked-income rule, but the plurality improperly backfilled its own pieced-together explanation. And the plurality excused Treasury's failure to respond to serious concerns commenters raised because the agency was purportedly "aware" of them. Add. 268-269. The IRS has defended both conclusions—downplaying its APA obligation to set forth a reasoned explanation on the record and disclaiming any duty to respond to comments "in writing," Br. 51—and alternatively urges this Court (Br. 62) to overlook those procedural errors because the IRS believes its action is substantively lawful.

In *Ohio*, the Supreme Court rejected every plank of the plurality's and IRS's position. *Ohio* reaffirmed that courts cannot uphold agency action based on an explanation the agency never articulated; that an agency's mere "awareness" of a problem "is not itself an explanation," 144 S. Ct. at 2054; and that courts cannot ignore an agency's APA violations merely because the agency's position on the merits might be upheld.

Individually, *Loper Bright* and *Ohio* each provides an independent basis for reversal here. Together, they leave no doubt that the Tax Court plurality's ruling is incompatible with controlling law and cannot stand.

3

Unlike *Loper Bright* and *Ohio*, the Supreme Court's decision in *Moore* v. *United States*, 144 S. Ct. 1680 (2024), has no bearing here. *Moore* did not involve Section 482 or the APA. It presented only a "precise and narrow" question under the Sixteenth Amendment: whether Congress, in imposing a transitional, one-time tax in 2017, could attribute a foreign corporation's realized-but-not-yet-distributed income to its U.S. shareholders. *Id.* at 1688-1689. The Court's holding on that highly particularized constitutional question in no way disturbs *First Security*'s statutory holding that Section 482 does not permit the IRS to attribute as income to a taxpayer payments that are legally prohibited. That this construction avoids a "distinct" constitutional question not raised in *Moore* (3M Br. 24) was further reason Treasury deserved no deference. But deference and constitutional avoidance are now academic here after *Loper Bright*. Moreover, even if *Moore* and *First Security* were somehow inconsistent, that would not empower *this* Court to depart from *First Security* where it squarely applies; the Supreme Court has made clear that it is *that* Court's exclusive prerogative to declare one of its own precedents overtaken by its later rulings. In any event, *Moore* sheds no light on the blocked-income rule's procedural invalidity under the APA.

4

# ARGUMENT

## I. *LOPER BRIGHT* ELIMINATES THE TAX COURT PLURALITY'S BASIS FOR UPHOLDING THE IRS'S SECTION 482 ALLOCATION HERE

The Tax Court plurality accepted the IRS's invitation to ignore *First Security* based solely on the doctrine formerly known as *Chevron* deference. But *Loper Bright* erased that ersatz doctrine from federal law.

### A. *Loper Bright* Overrules *Chevron* And Its Corollaries

*Chevron* announced a novel rule for judicial review of agency interpretations of federal statutes: When Congress had "directly spoken" in a statute "to the precise question at issue," courts were bound to apply that "clear" and "unambiguously expressed intent." *Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984). *But*, if a statute was "ambiguous" on an issue—signaling that Congress had not "directly addressed" it—courts had to defer to the agency's "permissible construction of the statute." *Id.* at 843. And under *National Cable & Telecommunications Ass'n* v. *Brand X Internet Services*, 545 U.S. 967 (2005), courts were bound to defer "even when [the] reviewing court" or a "pre-existing judicial precedent" "rea[d] the statute differently." *Loper Bright Enterprises* v. *Raimondo*, 144 S. Ct. 2244, 2254, 2265 (2024).

5

The Supreme Court's decision last Term in *Loper Bright* ended *Chevron*'s failed 40-year experiment and expressly "overruled" the "*Chevron* doctrine." 144 S. Ct. at 2269, 2273. Rejecting *Chevron*'s "mechanica[l]" deference "to agency interpretations" of ambiguous statutes, *Loper Bright* holds that courts must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Id.* at 2265, 2273. A court thus cannot "defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 2273.

*Loper Bright* rooted its decision in the APA's text, which directs courts to "decide all relevant questions of law" and to "hold unlawful and set aside agency action" determined to be "not in accordance with law." 144 S. Ct. at 2261 (quoting 5 U.S.C. § 706(2)(A)). As the Court explained, the APA "codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment." *Ibid.*; see *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177 (1803). In other words, "the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Loper Bright*, 144 S. Ct. at 2263.

6

The "traditional conception of the judicial function" that *Loper Bright* restored contrasts starkly with *Chevron*, which had "triggered a marked departure from the traditional approach." 144 S. Ct. at 2263-2264. *Chevron* mandated "*binding* deference to agency interpretations," so long as the agency "had offered 'a permissible construction of the statute,' even if not 'the reading the court would have reached if the question initially had arisen in a judicial proceeding.'" *Id.* at 2264-2265 (citation omitted). That deference doctrine rested, moreover, on a legal fiction: that Congress's failure to address a particular question in the statute itself amounted to a deliberate delegation to an agency to provide the answer. *Chevron* rested on "a presumption" that, when Congress "left ambiguity in a statute," it meant for that agency, rather than a reviewing court, to "resolv[e]" the latent uncertainty, within "whatever degree of discretion the ambiguity allows." *Id.* at 2265.

*Loper Bright* laid bare the incoherencies of *Chevron*'s approach. As the Court explained, *Chevron*'s presumption of "implicit delegations to agencies" lacks any sound basis. 144 S. Ct. at 2265. There is no reason to believe that purported "ambiguities" in statutes reflect intentional but unstated congressional delegations. Rather, "ambiguities may result from

7

an inability on the part of Congress to squarely answer the question at hand, or from a failure to even 'consider the question' with the requisite precision." *Ibid.*

*Loper Bright* also rejected *Chevron*'s core assumption that *incorrect* agency interpretations of statutes can nonetheless be legally "permissible." 144 S. Ct. at 2266. As *Loper Bright* recognized, that assumption "makes no sense": "[S]tatutes, no matter how impenetrable, do—in fact, must—have a single, best meaning," and in agency cases no less than others, courts must "use every tool at their disposal to determine the best reading of the statute and resolve the ambiguity." *Ibid.* The notion of wrong-*yet-permissible* statutory interpretations is a null set.

Finally, and "[p]erhaps most fundamentally," *Chevron*'s theory that Congress intended to delegate interpretive questions to administrative agencies rested on a mistaken view of courts' and agencies' proper roles in answering legal questions. *Loper Bright*, 144 S. Ct. at 2266. "[A]gencies have no special competence in resolving statutory ambiguities," but "[c]ourts do." *Ibid.* And it is especially improper to abdicate judicial responsibility where, as here, the issue concerns "the scope of an agency's

8

own power." *Ibid.* Agencies may not arrogate authority insulated from effective review.

*Loper Bright* sounded the death knell not only for *Chevron*, but also the spin-off doctrines it had produced. Most significantly for this appeal, *Loper Bright* interred *Chevron*'s corollary set forth in *Brand X*, 545 U.S. 967, which held that *Chevron* required courts to defer to an agency's construction even if it contradicted a prior judicial interpretation, "unless the prior court happened to also say that the statute is 'unambiguous.'" *Loper Bright*, 144 S. Ct. at 2265. But the *Brand X* "regime," the Court explained, "is the antithesis of the time honored approach the APA prescribes." *Ibid.* Courts decide whether to override agency interpretations—not the other way around.

### B. The Tax Court Plurality's Ruling Rests Entirely On The Now-Overruled Doctrine Of *Chevron* Deference

*Loper Bright* eviscerates the Tax Court plurality's sole rationale for upholding the IRS's view that payments never made to 3M because they were legally barred may be treated as 3M's "income" under Section 482.

The Tax Court plurality never suggested that the IRS's position represents the best reading of Section 482. Nor could it have: The Supreme Court made clear half a century ago in *Commissioner* v. *First*

9

*Security Bank of Utah, N.A.*, 405 U.S. 394 (1972), that Section 482 does not permit the IRS to treat legally prohibited payments as 3M's "income." See 3M Br. 34-47. Underscoring limits inherent in the "concept of income," *First Security* held that Section 482 does not empower the Commissioner to treat as "income" payments that a taxpayer "did not receive" and "was prohibited from receiving." 405 U.S. at 403. The Tax Court plurality did not dispute that *First Security* construed the term "income" in this manner. And neither the plurality nor the IRS has otherwise attempted to show that the "best meaning," *Loper Bright*, 144 S. Ct. at 2266, of "income" in Section 482 encompasses payments forbidden by law.

Instead, at the IRS's urging, the plurality sustained the interpretation of Section 482 embodied in Treasury's blocked-income rule based entirely on *Chevron* and *Brand X*—a position that *Loper Bright* renders untenable. Consistent with the IRS's notice of deficiency to 3M, the IRS argued below only that its allocation of income was supported by the blocked-income rule, which the agency advocated as a "reasonable construction of section 482" entitled to deference under *Chevron*. IRS T.C. Br. 65 (Mar. 21, 2016); see *id.* at 60, 85. According to the IRS, "Section 482 does not directly address," and "is silent as to[,] the precise issue

10

addressed by section 1.482-1(h)(2)," *i.e.*, whether blocked income may be treated as "income." *Id.* at 88-89 (capitalization altered; emphasis omitted). The IRS asserted that such statutory silence reflected an implicit delegation to Treasury to promulgate regulations "address[ing] allocation of income subject to foreign legal restrictions." *Ibid.* The IRS urged that "Congress left gaps for Treasury to fill" in Section 482 and that the blocked-income rule permissibly "filled a gap left in the statute." App. 433.

The Tax Court plurality endorsed the same misguided theory. The plurality reasoned that Section 482 is not "unambiguou[s]" and that Treasury's interpretation in the blocked-income rule merited deference at "*Chevron* step two." Add. 254 (citation omitted); Add. 231-263. The plurality downplayed *First Security* based on *Brand X*, reasoning that *First Security* did not expressly label Section 482 "unambiguous"—a label that a pre-*Chevron* case had no reason to apply—and that Treasury was free to override the Supreme Court's holding by adopting a contrary, "reasonable" interpretation of the statute. Add. 235; see Add. 231-241.

As 3M showed, the IRS's and Tax Court plurality's rationales were wrong even while *Chevron* remained on the books. See 3M Br. 36-38. As commenters highlighted, Treasury's blocked-income rule was a

11

transparent effort to overrule judicial precedent by regulation. *Id.* at 56. *Chevron* and *Brand X* never authorized administrative agencies to countermand a Supreme Court decision that definitively construed a statute—as illustrated by the Supreme Court in *United States* v. *Home Concrete & Supply, LLC*, 566 U.S. 478 (2012), and this Court sitting en banc in *MikLin Enterprises, Inc.* v. *NLRB*, 861 F.3d 812 (8th Cir. 2017).

But whatever disagreement the IRS might once have had with those propositions is now inconsequential. *Loper Bright* "overruled" *Chevron* and *Brand X*, describing their *ancien régime* as the "antithesis" of what the APA has always required. 144 S. Ct. at 2265, 2273. And the Tax Court plurality's reasoning exemplifies the errors *Loper Bright* condemned. By applying *Chevron* and *Brand X* "mechanically" to "afford *binding* deference" to Treasury's blocked-income rule—in the face of "a pre-existing judicial precedent" holding that Section 482 "means something else"—the Tax Court plurality "turn[ed] the statutory scheme for judicial review of agency action upside down." *Id.* at 2265. *Loper Bright* leaves no doubt that such abdication of the judicial role and outsourcing of statutory interpretation to agencies is impermissible.

Without *Chevron*, the only justification offered below for refusing to follow *First Security* has vanished.  Like both courts of appeals to address the issue previously, this Court should simply apply *First Security* and reject the IRS's unlawful overreach.  3M Br. 29-31 (discussing *Texaco, Inc.* v. *Commissioner*, 98 F.3d 825 (5th Cir. 1996), and *Procter & Gamble Co.* v. *Commissioner*, 961 F.2d 1255 (6th Cir. 1992)).

## C. The IRS's Responses Effectively Concede That *Loper Bright* Vitiates The Tax Court Plurality's Rationale

Even before *Loper Bright*, the IRS made little effort in this Court to defend the Tax Court plurality's *Chevron*-based holding.  And after *Loper Bright*, the IRS has properly abandoned reliance on deference principles altogether.  Its response to 3M's post-briefing letter addressing *Loper Bright* disavowed the agency's earlier position that *Chevron* deference applies here.  IRS *Loper Bright* Response 1 (July 12, 2024).  Indeed, the IRS disclaimed any form of deference, stating that "3M's *Chevron*-related arguments on appeal all turn on whether Treasury lacked authority to issue the regulation due to [*First Security*]" and that this "is a legal question for this Court that does not turn on deference principles."  *Ibid.*  And rightly so:  The blocked-income rule has none of the characteristics that might give agency interpretations "power to persuade."  *Skidmore* v. *Swift & Co.*,

13

323 U.S. 134, 140 (1944). It was promulgated long after the statute's enactment, embodies no specialized expertise, and seeks to expand the agency's power by overriding Supreme Court precedent. The IRS's admissions should end the merits analysis: The defendant agency has conceded that the only ground offered below for upholding its action is unsound.

Instead, echoing its response brief, the IRS contended in its letter that this Court "need not reach" the blocked-income regulation's validity at all because Section 482's second, "commensurate with income" sentence unambiguously authorizes the IRS's Section 482 reallocation. IRS *Loper Bright* Response 1; see IRS Br. 17-28. As 3M has shown, however, that argument is both waived and wrong.

The IRS never contended that Section 482's second sentence independently authorizes the blocked-income rule or the allocation here. Instead, it expressly argued that "[t]he statute is silent" on blocked income and that "[n]owhere does [Section 482] address the impact of foreign legal restrictions on the Commissioner's authority to allocate income." IRS T.C. Br. 88; accord *id.* at 95; see pp. 10-11, *supra*. According to the IRS, Congress had "left gaps for Treasury to fill" through such "silen[ce]" on the "precise issue." App. 433; see IRS T.C. Br. 88. Any argument that Section

14

482 authorizes allocating blocked income is therefore not merely forfeited, but waived, and off-limits on appeal. *Stewart* v. *Norcold, Inc.*, 24 F.4th 1183, 1185 (8th Cir. 2022).

In any event, the IRS's novel, revisionist position is meritless. Section 482's second, commensurate-with-income sentence says nothing about blocked income and deals only with valuation of intangibles, which bears no necessary relationship to blocked income. 3M Reply Br. 23-26. The IRS has never explained how that statutory language focused on intangibles negates or alters the basic directive in Section 482's *first* sentence, which was the basis for the IRS's action here and which the IRS's blocked-income rule purports to interpret. The IRS's inability to square its position with text or precedent should end the Section 482 analysis.

## D. The IRS's Proposed Carveout Of Legal Issues From APA Review Is Baseless

Although the IRS has acknowledged that *Loper Bright* dooms any defense of its regulation based on *Chevron*, it has gamely attempted to spin *Loper Bright* as support for its position on the APA. The IRS argued that the decision "actually supports the Commissioner" on Treasury's failure to satisfy the APA's "reasoned-decisionmaking standard." IRS *Loper Bright* Response 1. The IRS now apparently reads *Loper Bright* as

15

absolving agencies from articulating a reasoned explanation for their positions on "legal question[s]," as distinct from "matters of policymaking and factfinding." *Ibid*. That remarkable contention lacks any plausible basis in the Supreme Court's decision or existing law.

For decades before *Loper Bright*, courts recognized that the APA's requirement that agencies reasonably explain their actions applies to policymaking and statutory-interpretation issues alike. For example, under *Chevron*, before determining whether to accord "deference" to an agency's interpretation of a statute, a court "must first understand that interpretation." *American Federation of Government Employees, AFL-CIO, Local 1738* v. *FLRA*, 806 F.2d 1105, 1108 (D.C. Cir. 1986). "[T]he agency charged with administering the [s]tatute," courts recognized, thus "must carefully examine [its] meaning" and "explain its application." *Ibid.* An agency's "failure to explain its reading of the statute" makes it "impossible to conclude" that agency action "was anything other than arbitrary and capricious." *CSI Aviation Services, Inc.* v. *Department of Transportation*, 637 F.3d 408, 416 (D.C. Cir. 2011); accord *Verizon* v. *FCC*, 740 F.3d 623, 636 (D.C. Cir. 2014) ("The APA's requirement of reasoned decision-making ordinarily demands that an agency acknowledge and explain the reasons

16

for a changed interpretation."); *Williams Natural Gas Co.* v. *FERC*, 943 F.2d 1320, 1327 (D.C. Cir. 1991) (agency must "lay out for the court its understanding of the statute"); *Prill* v. *NLRB*, 755 F.2d 941, 942, 948, 953 (D.C. Cir. 1985) (deeming agency action as "without adequate rationale" where agency took action on "misconception" that its action was legally required, even though agency could perhaps have taken the same action "in the exercise of its discretion"). Indeed, an agency's statutory authority *vel non* is so fundamental that agencies must address it *sua sponte*. See 3M Reply Br. 20. The IRS cites no case supporting its purported carveout for legal issues.

To the extent the IRS views *Loper Bright* as freeing federal agencies from the APA's reasoned-explanation requirement for legal issues, the Supreme Court's decision says no such thing. *Loper Bright* did not suggest—much less hold—that by eliminating *Chevron* it was somehow empowering agencies to *ignore* their settled APA obligations to offer reasoned explanations of their positions on "legal question[s]." IRS *Loper Bright* Response 1. To the contrary, *Loper Bright* underscored that overruling *Chevron* was necessary to *enforce* the APA's requirements. See, *e.g.*, 144 S. Ct. at 2261. The only passage of the opinion the IRS cited that addressed "reasoned

17

decisionmaking" simply makes clear that, even when Congress *has* delegated authority to an agency, the APA *still* governs the agency's exercise of that authority. IRS *Loper Bright* Response 1 (citing *Loper Bright*, slip op. 14-15, 144 S. Ct. at 2263). It is implausible that the Supreme Court's historic decision overturning a doctrine of agency deference because it was unfaithful to the APA simultaneously created a novel, atextual carveout from the APA for legal issues.

The IRS's invented exception would be unavailing in any event because Treasury *also* never explained the blocked-income rule's rationale, and it *also* failed to respond to public comments raising policy concerns. 3M Br. 61. For example, commenters explained that the blocked-income rule would have harmful effects on certain industries and would deter cross-border transactions in certain regions where restrictions on transactions with foreign affiliates were common. *Ibid.* Treasury likewise never answered those comments. Even on the IRS's latest conception of the APA, the blocked-income rule still flunks its bedrock requirements.

## II. *OHIO* CONFIRMS THAT THE BLOCKED-INCOME RULE VIOLATES THE APA

The APA's arbitrary-and-capricious standard compels agencies to explain reasonably how they are addressing every important aspect of a

18

regulatory problem and to respond to significant comments in writing. See 3M Br. 47-66. *Ohio* v. *EPA*, 144 S. Ct. 2040 (2024), reaffirms these "long-settled standards" and refutes the IRS's and Tax Court plurality's position that an agency's "awareness" of commenters' "concern[s]" is a substitute for the "explanation" the APA demands. *Id.* at 2053-2055.

### A. *Ohio* Reaffirms The APA's Requirements That An Agency Itself Articulate A Reasoned Explanation For Its Action And Respond To Significant Comments

In *Ohio*, the Supreme Court held that stay applicants were likely to succeed in showing that an Environmental Protection Agency (EPA) "final rule" under the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, was arbitrary and capricious because the agency "failed to supply 'a satisfactory explanation'" or a "reasoned response" to comments. 144 S. Ct. at 2054-2055. The EPA rule at issue set forth a federal plan specifying emissions-control measures for 23 States. *Id.* at 2048-2051. In the rulemaking, commenters had argued that EPA's proposal "assum[ed] that the [Plan] would apply to all [23] covered States" and that, if some States were removed—as 12 ultimately were—EPA would need to revisit the Plan. *Id.* at 2050. EPA's final rule added a "severability provision" providing that, if any States were removed, the Plan would still apply without change to the remaining

States.  *Id.* at 2051.  But "EPA did not address whether or why the same emissions-control measures" would continue to be warranted.  *Ibid.*

The Supreme Court stayed enforcement of the Plan.  *Ohio*, 144 S. Ct. at 2052-2057.  The Court reasoned that the challengers were likely to succeed on their APA challenges because EPA had failed to explain why the Plan should remain unchanged even if certain States were removed and because the agency had "offered no reasoned response" to commenters' concerns.  *Id.* at 2054.  The Court specifically and expressly rejected EPA's argument that its "severability provision" sufficed as a response because it showed the agency "was *aware* of [commenters'] concern."  *Ibid.* (emphasis added).  The Court explained that an agency's "awareness" of a problem "is not itself an explanation" and that EPA "did not address [commenters'] concern so much as sidestep it."  *Id.* at 2054-2055.  The Court concluded that, "if there [wa]s an explanation, it d[id] not appear in the final rule." *Id.* at 2054.  Accordingly, the Court held that EPA's action was not "reasonably explained" and had "ignored an important aspect of the problem before it."  *Ibid.* (internal quotation marks omitted).

*Ohio* thus dispels any doubt that agencies must expressly "address" commenters' significant concerns and reasonably explain their actions at

20

the time they act.  144 S. Ct. at 2052-2054.  Those requirements, *Ohio* recognized, are "long-settled." *Id.* at 2053.

## B. *Ohio* Repudiates The IRS's And Tax Court Plurality's Key Premises In Defending The Blocked-Income Rule's Validity Under The APA

*Ohio* refutes three key premises invoked by the IRS and Tax Court plurality to overcome Treasury's explanatory failures in adopting the blocked-income rule:  (1) that the Tax Court may undertake an indulgent effort to reconstruct Treasury's thinking; (2) that an agency's "awareness" of comments suffices as an explanation; and (3) that procedural invalidity is harmless error so long as a rule is substantively authorized.

1.  *Ohio* confirms that the Tax Court plurality erred by inferring rationales for the blocked-income rule that the agency itself never articulated "in the final rule."  144 S. Ct. at 2054.  In adopting that rule, Treasury offered no explanation of the rule's purported rationale.  3M Br. 53-54; 3M Reply Br. 12.  The Tax Court plurality sought to overcome that shortcoming by backfilling a rationale, positing that the rule embodies "a specific application of two principles of section 482:  (1) the arm's-length standard and (2) the principle that section 482 should achieve tax parity between controlled and uncontrolled parties."  Add. 265.  Even before

*Ohio*, that imaginative judicial reconstruction of an agency's unstated thinking was improper under settled APA precedent. 3M Br. 57-59.

*Ohio* confirms that the APA forbids such judicial ventriloquism. As the *Ohio* Court explained, "if there [wa]s an explanation" of the agency's rationale and a response to commenters' significant criticisms, that explanation had to "appear *in the final rule*." 144 S. Ct. at 2054 (emphasis added). As *Ohio* illustrates, not even subsequent statements by the agency itself can fill that gap. *Ohio* refused to consider EPA's post hoc attempts to cure its failure to explain its action: Although EPA had later "issued a document in which it sought to provide further explanations for the course it pursued," the Supreme Court rejected those after-the-fact assertions as out of bounds, because courts look "to only 'the grounds that the agency invoked'" when it acted. *Id.* at 2055 n.11 (citation omitted); accord *SEC* v. *Chenery Corp.*, 318 U.S. 80, 87 (1943). A fortiori, explanations invented by courts are off-limits.

So too with Treasury's blocked-income rule. The only explanation that counts is one the agency itself supplies in adopting the regulation. But Treasury provided none.

2. *Ohio* also squarely forecloses the Tax Court plurality's view—echoed by the IRS on appeal (Br. 60)—that an agency need not respond to comments in writing so long as it was purportedly "aware" of the significant concerns commenters raised. 144 S. Ct. at 2054-2055. For instance, the IRS now contends that Treasury was "aware" of commenters' criticisms that Treasury lacked statutory authority to promulgate the blocked-income rule under Section 482 itself, *First Security*, and related circuit-court decisions and that Treasury's approach presented numerous policy and practical concerns. 3M Br. 61-62. But Treasury's only response to comments during the rulemaking process was silence, as the IRS concedes. See IRS Br. 54 (acknowledging that Treasury's final rule did not "explicitly discus[s]" these comments).

The Tax Court plurality asserted that Treasury's failure to respond did not matter because Treasury was supposedly "aware" of these concerns and had included a boilerplate disclaimer that it was adopting the rule "[a]fter consideration of all the comments." Add. 203, 268 n.208. The IRS backs the same view, contending that Treasury had no obligation to "respond in writing" to "criticism[s]" of which "Treasury was already well

23

aware." IRS Br. 50, 58, 60, 62. And the IRS notes that Treasury "revised the final regulation" in other ways to address other comments. *Id.* at 62.

*Ohio* rejected these same arguments. In *Ohio*, as here, the agency argued that it was "aware of [commenters'] concern," pointing to its addition of the severability provision in the final rule. 144 S. Ct. at 2051, 2054 (describing this provision as EPA's "response to the problem commenters raised"). The Court was unmoved. "EPA's response did not address the applicants' concern so much as sidestep it," the Court explained, and "awareness is not itself an explanation." *Id.* at 2055.

The same reasoning is dispositive here. Contrary to the IRS's mistaken view, *Ohio* makes plain that Treasury's supposed "awareness" of commenters' concerns was insufficient and that Treasury was required to "respond in writing" to significant comments. *Cf.* IRS Br. 62. Accordingly, that Treasury concededly never "explicitly discussed" (IRS Br. 54) commenters' concerns with the proposed blocked-income rule is fatal. *Ohio* confirms that the blocked-income rule violates the APA.

3. Finally, *Ohio* refutes the IRS's fallback contention that the blocked-income rule's procedural invalidity would be harmless error if the IRS is right on the statutory merits—*i.e.*, if Section 482 and *First*

24

*Security* authorize allocating payments forbidden by law as "income." See IRS Br. 61. *Ohio* rejected that very argument, concluding that the stay applicants there were likely to succeed on their challenge even though the Court expressly reserved the possibility that EPA's action could be substantively reasonable. See 144 S. Ct. at 2054 ("Perhaps there is some explanation why the number and identity of participating States does not affect what measures maximize cost-effective downwind air-quality improvements."). The dissent stressed the procedure-only focus of the Court's ruling and argued (*inter alia*) that harmless-error principles should have precluded issuance of a stay. *Id.* at 2060 (Barrett, J., dissenting). But the majority was unpersuaded. See *id.* at 2057. The Court's conclusion that the challengers were likely to succeed and entitled to a stay confirms that a rule's *procedural* invalidity is independent of its *substantive* merits and is reason enough to invalidate unlawful agency action.

*****

Here, the sole basis the IRS invoked in its deficiency notice and the Tax Court for the lawfulness of its deficiency determination was the blocked-income rule. App. 106. That regulation is not only statutorily

unauthorized but also arbitrary and capricious and therefore invalid under the APA. *Ohio* lays to rest each of the IRS's excuses for overlooking that independently fatal flaw.

### C. The IRS's Attempt To Carve Out Legal Issues From The APA's Reasoned-Explanation Requirement Is Baseless

In its response to 3M's post-briefing letter addressing *Ohio*, the IRS doubled down on its suggestion that legal issues are exempt from the APA's reasoned-decisionmaking requirement. See IRS *Loper Bright* Response 2. But as explained above, there is no such exemption, and it would not apply here in any event. See pp. 16-18, *supra*; 3M Reply Br. 20.

*Ohio* certainly does not support the IRS's contention. Although *Ohio* happened to involve an agency's failure to explain a particular decision EPA made within its statutory authority, the "long-settled standards" the Court reaffirmed and applied in granting a stay apply equally to statutory-interpretation and policy questions. 144 S. Ct. 2053-2054. The Supreme Court had no occasion to confirm that the APA's reasoned-explanation requirement applies to legal issues because EPA's final rule did address "the Agency's legal authority for taking th[at] action." 87 Fed. Reg. 20,036, 20,050 (Apr. 6, 2022). Treasury, in contrast, never did so in adopting the blocked-income rule.

26

## III. *Moore* Has No Bearing On The Blocked-Income Question Presented In This Case

*Moore* v. *United States*, 144 S. Ct. 1680 (2024), is irrelevant to the issues in this case. The dispute here is the lawfulness of the IRS's allocation based on the blocked-income regulation. That dispute turns on whether the regulation is invalid under either Section 482 or the APA.

*Moore* addressed neither of those issues. It did not involve Section 482. Instead, *Moore* resolved a "precise and narrow question" under the Sixteenth Amendment: "whether Congress"—in imposing an unusual, one-time tax as part of a broader transition from a worldwide system of taxation to a quasi-territorial approach—could "attribute an entity's realized and undistributed income to the entity's shareholders or partners, and then tax the shareholders or partners on their portions of that income." 144 S. Ct. at 1688-1689. *Moore* thus concerned the outer constitutional limits of what Congress *can* do—not what Congress *has* done in Section 482, which *First Security* definitively answered. *Moore*'s holding that Congress could treat foreign businesses as pass-through entities in that unique context sheds no light on whether Section 482 allows allocating to a taxpayer as "income" payments never made because they were barred by foreign law. And *Moore* says nothing whatsoever about the APA.

27

A.  *Moore* concerned the constitutionality of a one-time, retroactive pass-through tax adopted in 2017 (the Mandatory Repatriation Tax), which "attributed the long-accumulated and undistributed income of American-controlled foreign corporations to American shareholders, and then taxed those American shareholders on their pro rata shares of that long-accumulated income."  144 S. Ct. at 1686.  Taxpayers challenged the Mandatory Repatriation Tax as an unconstitutional, unapportioned direct tax on the shares they owned in a corporation's stock.

The Supreme Court rejected the challenge.  The Court characterized the Mandatory Repatriation Tax as imposing a tax on the corporation's realized (though undistributed) income and therefore as an indirect income tax not subject to apportionment under the Sixteenth Amendment.  *Moore*, 144 S. Ct. at 1688.  The Court's "longstanding precedents" confirmed that there was no constitutional infirmity in attributing an entity's undistributed income to its shareholders or partners.  *Id.* at 1691.  And whether Congress taxes the entity or instead its shareholders or partners, the Court held, the tax remains a tax on income not subject to apportionment.  *Ibid.*

B.     In its own post-briefing letter, the IRS suggested that *Moore* somehow bolsters the validity of its allocation.  IRS *Moore* Letter 1 (July 5, 2024).  But *Moore* said nothing about the Section 482 question here (or any other statutory question).  In fact, the Court rejected as "entirely incorrect" the taxpayers' assertion that its constitutional holding about attribution would broaden the scope of "'gross income'" under the Internal Revenue Code.  144 S. Ct. at 1696 n.7.  And *Moore* never mentioned the APA or said anything to excuse Treasury's refusal to follow the APA in adopting the blocked-income rule.

*Moore* certainly provides no license to an agency to disregard the Supreme Court's controlling decision in *First Security*, which speaks directly to the statutory question here:  whether Section 482 authorizes allocating illegal payments as "income."  There is no conflict between the cases because they addressed wholly different issues.  But even if they conflicted, only the Supreme Court itself can declare that one of its own precedents has been overtaken by another.  See, *e.g.*, *Agostini* v. *Felton*, 521 U.S. 203, 237 (1997) (lower courts must "leav[e] to th[e] [Supreme] Court the prerogative of overruling its own decisions").

Appellate Case: 23-3772     Page: 35     Date Filed: 10/03/2024 Entry ID: 5442748

Trying a different, more circuitous route, the IRS argued that *Moore*'s discussion of *Heiner* v. *Mellon*, 304 U.S. 271 (1938), indirectly undercuts *First Security*. IRS *Moore* Letter 2. That contention, too, is misdirected. Just as lower courts cannot treat a later Supreme Court decision as implicitly abrogating an earlier one even when they actually conflict, a lower court certainly cannot deem an on-point Supreme Court precedent defunct merely because its reasoning was supposedly undermined by a later opinion.

Moreover, as 3M previously explained, *Moore*'s discussion of *Mellon* in no way helps the IRS here, and *Mellon* is likewise irrelevant to the issues in this case. 3M Reply Br. 8-9. The partnership in *Mellon* received income; payments simply were not "currently distributable" to partners under state law. 304 U.S. at 281. As the Court explained decades ago in *United States* v. *Basye*, 410 U.S. 441 (1973)—which postdated (and cited) *First Security*, *id.* at 453-454 & n.13—and reiterated in *Moore*, *Mellon* merely "reaffirmed" Congress's authority to treat partnerships as pass-through entities and to "tax either the partnership or the partners." *Moore*, 144 S. Ct. at 1689 (emphasis omitted). The IRS's claim that *Mellon* itself or *Moore*'s gloss on it undermines *First Security* is baseless.

30

C.     Contrary to the IRS's assertion in its letter addressing *Moore* (IRS *Moore* Letter 1), 3M has never contended that *Moore* is "relevan[t]" to the issues in this case.  Instead, 3M explained that an additional reason to reject the government's erroneous reading of Section 482 is that doing so avoids a serious, but "distinct," constitutional question not presented in *Moore*:  whether the Sixteenth Amendment authorizes taxation of payments that are not and can never be made because they are illegal. 3M Br. 24; 3M Reply Br. 5.  As 3M noted, *Moore* never presented that question, and the Court in *Moore* did not address it.

Instead, *Moore* presented "a different issue under the Amendment" (3M Br. 24):  whether the Amendment permits Congress to tax income that has not been realized.  See IRS Br. 35 n.9.  *Moore* expressly reserved even that question.  The Court declined to decide whether realization of income is constitutionally required because the Court concluded that, under the Mandatory Repatriation Tax, the disputed income *had* been "realized by the corporation" and that Congress could permissibly attribute that income to the corporation's shareholders.  *Moore*, 144 S. Ct. at 1691 n.3; see *id.* at 1696 ("We do not decide that [realization] question today."); *id.* at 1697 ("[W]e need not resolve that disagreement over realization.").

Appellate Case: 23-3772     Page: 37     Date Filed: 10/03/2024 Entry ID: 5442748

*Moore*'s holding on the attribution issue it did address is equally immaterial. No one here disputes that Section 482 validly authorizes the IRS to attribute to a taxpayer income in connection with a controlled transaction if "necessary * * * clearly to reflect the income of" the taxpayer, 26 U.S.C. § 482—*i.e.*, to capture the taxpayer's *true* income. But *Moore* says nothing about whether the attribution authority Section 482 confers empowers the IRS to allocate as "income" to a taxpayer payments barred by law. *First Security* answered that statutory question in the negative, avoiding any issue of the outer limits of Congress's power.

Although the constitutional-avoidance canon provided further reason not to defer to the government's mistaken statutory interpretation, that canon is now academic here given *Loper Bright*'s overruling of *Chevron*. Before *Loper Bright*, the IRS and Tax Court plurality relied entirely on *Chevron* to defend the blocked-income regulation's validity. When *Chevron* was still good law, the constitutional-avoidance canon mattered because it trumped *Chevron* deference. See, *e.g.*, *Edward J. DeBartolo Corp.* v. *Florida Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 574-575 (1988). But this Court now has no need to resolve a conflict between *Chevron* and constitutional avoidance because *Loper*

32

*Bright* overruled *Chevron* altogether, and the IRS has disclaimed any reliance on deference. After *Loper Bright*, all that matters is whether the government's position embodies the "best reading" of the statute. 144 S. Ct. at 2263. As 3M has shown—and as *First Security* and both circuit-court rulings applying it in this context make clear—the IRS's position that Section 482 permits allocating *blocked* income as "income" is wrong.

## CONCLUSION

The Court should reverse the Tax Court's judgment.

Respectfully submitted.

Dated: October 2, 2024

/s/ Jonathan C. Bond
Jonathan C. Bond
Saul Mezei
Jeff Liu
M. Christian Talley
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
(202) 955-8500
JBond@gibsondunn.com

*Counsel for Appellant*
*3M Company & Subsidiaries*

33

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of this Court's September 17, 2024, Order because it contains 6,497 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f); and

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

3.     This brief has been scanned for viruses and is virus-free.

Dated: October 2, 2024

/s/ Jonathan C. Bond
Jonathan C. Bond

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

 /s/ Jonathan C. Bond
Jonathan C. Bond