# No. 23-3772

## In the United States Court of Appeals for the Eighth Circuit

---

3M COMPANY & SUBSIDIARIES,

*Appellant,*

v.

COMMISSIONER OF INTERNAL REVENUE,

*Appellee.*

---

ON APPEAL FROM THE UNITED STATES TAX COURT
No. 5816–13 — 160 T.C. No. 3

---

## SUPPLEMENTAL BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL

---

Tyler S. Badgley
Maria C. Monaghan
U.S. CHAMBER
LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

Christopher J. Walker
*Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
christopher.j.walker@gmail.com

*Counsel for* Amicus Curiae

## RULE 26.1 DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America (Chamber) states that it is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

## TABLE OF CONTENTS

INTEREST OF *AMICUS CURIAE*...................................................................1

SUMMARY OF ARGUMENT ....................................................................3

ARGUMENT ...........................................................................................5

    I.    *Loper Bright* Requires Courts to Exercise Independent Judgment When Interpreting Statutes..................................5

    II.   The IRS's Rule Here Is Arbitrary and Capricious in the Same Respects as the Rule the Supreme Court Stayed in *Ohio v. EPA*. ..........................................................9

    III.  Both *Loper Bright* and *Ohio v. EPA* Protect Stability and Predictability in the Administrative State. .........................13

CONCLUSION ......................................................................................15

Appellate Case: 23-3772    Page: 3    Date Filed: 10/08/2024   Entry ID: 5444275

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Chevron v. NRDC*, 467 U.S. 837 (1984).......................................... passim

*Comm'r v. First Security Bank of Utah, N.A.*, 405 U.S. 394 (1972) ... 8, 14

*DHS v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020)................................. 12

*Encino Motorcars v. Navarro*, 579 U.S. 211 (2016)................................. 12

*Ethyl Corp. v. EPA*, 51 F.3d 1053 (D.C. Cir. 1995) ................................. 10

*FCC v. Fox Television Stations*, 556 U.S. 502 (2009)............................... 10

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) ......................... 10

*Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) ..... passim

*Marbury v. Madison*, 5 U.S. 137 (1803)..................................................... 7

*Moore v. United States*, 144 S. Ct. 1680 (2024) ........................................ 2

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .................................................................................. 4, 10, 11

*Ohio v. EPA*, 144 S. Ct. 2040 (2024) ............................................... passim

*Procter & Gamble Co. v. Comm'r*, 961 F.2d 1255 (6th Cir. 1992) .......... 14

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ...................................... 7, 8

*Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735 (1996) ............... 6

*Texaco v. Comm'r*, 98 F.3d 825 (5th Cir. 1996) ...................................... 14

*U.S. Sugar Corp. v. EPA*, 113 F.4th 984 (D.C. Cir. 2024) ...................... 10

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Statutes**

5 U.S.C. § 706 ........................................................................ 6, 9

Appellate Case: 23-3772     Page: 5     Date Filed: 10/08/2024 Entry ID: 5444275

## INTEREST OF *AMICUS CURIAE**

The Chamber of Commerce of the United States of America (Chamber) is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

On February 14, 2024, the Chamber filed an *amicus curiae* brief in this case to explain why the U.S. Department of Treasury (Treasury) and Internal Revenue Service (IRS) should not be allowed to evade their obligation to comply with the Administrative Procedure Act (APA) and

---

\* Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus curiae* states that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

related administrative law doctrines. On September 17, 2024, the Court asked for supplemental briefing from the parties to address the implications of three recent U.S. Supreme Court decisions, including *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and *Ohio v. EPA*, 144 S. Ct. 2040 (2024).[1]

*Loper Bright* and *Ohio v. EPA* will have a substantial impact on administrative law, including in this case, and thus on the Chamber's members. Indeed, *amicus curiae* and its members are already grappling with the implications of these two decisions in numerous challenges to agency actions pending in courts across the country. Given the breadth of its membership and its long history of challenging regulations that violate the APA and related doctrines, the Chamber is uniquely positioned to speak to the effects of *Loper Bright* and *Ohio v. EPA* on this case and more broadly.

---

[1] The Court also asked for supplemental briefing on *Moore v. United States*, 144 S. Ct. 1680 (2024), on which *amicus curiae* does not opine in this brief.

## SUMMARY OF ARGUMENT

In recent years, the Supreme Court has repeatedly emphasized the need for meaningful judicial review of federal agency action under the APA. Last Term, the Supreme Court issued two major administrative law decisions on the subject, on which this Court has requested supplemental briefing. Both decisions further support reversal of the Tax Court's decision in this case.

First, in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the Supreme Court decisively rejected *Chevron* deference. Now, courts must exercise their independent judgment—i.e., conduct de novo review—when it comes to the meaning of statutes that govern a federal agency, including whether Congress has delegated policymaking discretion to the agency, and if so, whether the agency has acted within its delegated discretion. In this case, the Tax Court rested its decision on the now-overruled *Chevron* deference regime, and thus its decision should be reversed.

Second, in *Ohio v. EPA*, 144 S. Ct. 2040 (2024), the Supreme Court further clarified the scope of judicial review of agency action under the APA's "arbitrary and capricious" standard. In particular, the Court

3

stayed the EPA's rule after concluding that it was likely arbitrary and capricious because the agency failed to respond to significant comments raised during the public comment period and failed to engage in reasoned decisionmaking by not "supply[ing] 'a satisfactory explanation for its action'" and by "ignor[ing] 'an important aspect of the problem' before it." *Id.* at 2054 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The IRS here committed these same errors.

Finally, both *Loper Bright* and *Ohio v. EPA* protect regulatory stability and predictability. In overruling *Chevron*, *Loper Bright* sought to curb the regulatory whiplash that *Chevron* enabled by allowing agencies to change positions over time. Similarly, arbitrary and capricious review, as the Supreme Court applied it in *Ohio v. EPA*, guards against regulatory instability by requiring agencies to engage in reasoned decisionmaking. The Tax Court's decision here—issued before either of these cases— failed to properly apply these guardrails. The Tax Court neither enforced the best reading of the statute nor required the IRS to engage in reasoned decisionmaking when changing its position. This Court should reverse

the Tax Court and apply the meaningful checks on agency overreach that *Loper Bright* and *Ohio v. EPA* both require.

## ARGUMENT

### I. *Loper Bright* Requires Courts to Exercise Independent Judgment When Interpreting Statutes.

For decades, a touchstone of administrative law had been judicial deference to a federal agency's reasonable exercise of statutory discretion to regulate. *Chevron v. NRDC*, 467 U.S. 837 (1984), perhaps best exemplified that. In recent years, however, the Supreme Court began retreating from that approach, culminating last Term with the elimination of *Chevron* deference in *Loper Bright*. Judicial review now requires courts to "exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright*, 144 S. Ct. at 2273.

Analytically, moving from *Chevron* deference to *Loper Bright* "independent judgment" is an important shift in administrative law. Under *Chevron*, courts were instructed to adopt "a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to

5

possess whatever degree of discretion the ambiguity allows." *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740–41 (1996). The *Loper Bright* Court rejected this presumption. Instead, *Loper Bright* instructs reviewing courts to follow "the APA's demand that courts exercise independent judgment in construing statutes administered by agencies." *Id.* at 2269; *see also* 5 U.S.C. § 706 ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."). In other words, courts do what they otherwise would do in an ordinary statutory interpretation case: follow binding judicial precedent and then resolve any remaining interpretive questions by applying the traditional tools of statutory interpretation.

The Tax Court's decision cannot be squared with this fundamental shift. The Tax Court spent more than 30 pages doing the *Chevron* two-step dance. *See* Addendum to Appellant 3M's Opening Brief (Add.) 231–263. In the first 24 pages of *Chevron* analysis, the Tax Court strained to reject every case cited and argument made by petitioner because none establish that the statutory text is "unambiguous" at *Chevron* step one.

Appellate Case: 23-3772   Page: 11   Date Filed: 10/08/2024 Entry ID: 5444275

*Id.* at 250; *see id.* at 231–254 (full *Chevron* step one discussion). In the following 10 pages, the Tax Court then deferred to the IRS's interpretation as merely "reasonable" at *Chevron* step two. *See id.* at 254–263. Nowhere does the Tax Court conclude that the IRS's interpretation is the best interpretation of the statute, as *Loper Bright* now requires.

Although *Chevron* deference might have been the law of the land when the Tax Court issued its decision, that is no longer so today.[2] In overruling *Chevron*, the *Loper Bright* Court declared that such deference is inconsistent with the APA and is "an impediment, rather than an aid, to accomplishing the basic judicial task of 'say[ing] what the law is.'" *Loper Bright*, 144 S. Ct. at 2263–64, 2271 (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). The decision under review cannot stand because the Tax Court never exercised its independent judgment to declare the best interpretation of the statute.

Finally, there is the issue of *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). Eight decades ago in *Skidmore*, the Supreme Court suggested that courts should give "weight" to an agency interpretation based on "the

---

[2] As detailed in Part II of the Chamber's initial *amicus curiae* brief in this case, the Tax Court erred in applying *Chevron* deference at all because the IRS's rule was procedurally defective.

7

thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* at 140. In *Loper Bright*, the Supreme Court was careful to frame *Skidmore* as a form of "respect" based on the agency's power to persuade. *See, e.g.*, *Loper Bright*, 144 S. Ct. at 2273 ("Careful attention to the judgment of the Executive Branch may help inform that inquiry."); *id.* at 2267 ("The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch."). In other words, sometimes the government may have views that are helpful to understanding a statutory framework—just as other parties may have helpful insights. When views are thoughtful and well informed, they may well carry respect.

In this case, no such respect is warranted. As detailed in 3M's opening brief, the IRS's interpretation is procedurally and substantively defective; it lacks any analysis of the Supreme Court's conflicting decision in *Commissioner v. First Security Bank of Utah, N.A.*, 405 U.S. 394 (1972); it fails to explain why the IRS changed its position; and it

otherwise fails to demonstrate any other *Skidmore* factor that would have the power to persuade. *See* App. 3M Opening Br. 19–45, 52–66.

## II. The IRS's Rule Here Is Arbitrary and Capricious in the Same Respects as the Rule the Supreme Court Stayed in *Ohio v. EPA*.

Even if this Court were to determine that the IRS had statutory authority to promulgate this rule, that is not the end of the matter. Under the APA, courts must set aside agency action if, among other things, it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As detailed in Part I of the Chamber's initial *amicus curiae* brief, the APA's arbitrary and capricious standard has become known as "hard look" review, requiring the agency to engage in reasoned decisionmaking.

The Chamber's initial *amicus curiae* brief focuses extensively on how the IRS's rule fails hard look review. *See* Initial Chamber *Amicus* Br. 5–12. Those arguments will not be repeated here. The Supreme Court's decision in *Ohio v. EPA*, 144 S. Ct. 2040, however, further shows

Appellate Case: 23-3772   Page: 14   Date Filed: 10/08/2024 Entry ID: 5444275

how the IRS's rule in this case is arbitrary and capricious under the APA.[3]

In *Ohio v. EPA*, the Court addressed the EPA's rule—following separate EPA actions disapproving more than 20 states' Clean Air Act implementation plans—that imposed one federal implementation plan covering all disapproved states. *See id.* at 2049–50. During the public comment period, commenters raised concerns about the EPA's proposed rule and underlying scientific modeling because both assumed that all disapproved states would be covered by the federal plan even though that was far from certain. *See id.* at 2050–51.

Despite these public comments, the EPA issued the final rule. The only relevant change the EPA made was to add a severability provision that would enforce the rule against all remaining disapproved states in

---

[3] In *Ohio v. EPA*, the Supreme Court applied the "arbitrary and capricious" standard of the Clean Air Act—not that of the APA—but it treated those standards as interchangeable, citing and applying the key APA reasoned-decisionmaking precedents. *See, e.g.*, *Ohio v. EPA*, <u>144 S. Ct. at 2053</u> (citing *FCC v. Prometheus Radio Project*, <u>592 U.S. 414, 423</u> (2021); *FCC v. Fox Television Stations*, <u>556 U.S. 502, 513</u> (2009); *State Farm*, <u>463 U.S. at 43</u>); *see also U.S. Sugar Corp. v. EPA*, <u>113 F.4th 984, 991</u> n.7 (D.C. Cir. 2024) (noting that "judicial review under the Clean Air Act is 'essentially the same' as judicial review under the APA" (quoting *Ethyl Corp. v. EPA*, <u>51 F.3d 1053, 1064</u> (D.C. Cir. 1995))).
.

Appellate Case: 23-3772     Page: 15     Date Filed: 10/08/2024 Entry ID: 5444275

the event that some states dropped out of the rule's coverage. *See id.* at 2051. As commenters had predicted, several states obtained stays of the specific disapproval decisions that were a predicate to applying the federal plan in those states. *See id.* Critically, the Supreme Court noted, the "EPA did not address whether or why the same emissions-control measures it mandated would continue to further the [rule's] stated purpose of maximizing cost-effective air-quality improvement if fewer States remained in the plan." *Id.*

In granting a stay of the rule, the Supreme Court concluded that the challengers were likely to prevail on their arbitrary and capricious claim. In its failure to respond to significant public comments, the EPA had likely failed to engage in reasoned decisionmaking by not "supply[ing] 'a satisfactory explanation for its action'" and by "ignor[ing] 'an important aspect of the problem' before it." *Id.* at 2054 (quoting *State Farm*, 463 U.S. at 43). Arbitrary and capricious review requires courts to "ensure, among other things, that the agency has offered 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *Id.* at 2053 (quoting *State Farm*, 463 U.S. at 43).

11

This case is an easy reversal under the Supreme Court's approach to arbitrary and capricious review in *Ohio v. EPA*. As Judge Toro, joined by five of his Tax Court colleagues, explained in his dissent, "Treasury offered no explanation for its choices with respect to the rule. Not a single sentence. Treasury did not explain why a revision to the existing rule was needed." Add. 311. The IRS, the dissent continued, "neither acknowledged nor responded to significant comments challenging Treasury's authority to promulgate the regulation and pointing out flaws in its proposed approach." *Id.* at 309.

Indeed, not only did the IRS fail to respond to significant comments and thus ignored an important aspect of the problem, as the Supreme Court concluded had likely occurred in *Ohio v EPA*; the IRS's regulation also diverged from the agency's prior approach and from settled judicial precedents. When an agency changes its position to increase regulatory burdens, arbitrary and capricious review often requires more of the agency than if it were regulating on a blank slate. *See* Initial Chamber *Amicus* Br. 8 (citing, *inter alia*, *Encino Motorcars v. Navarro*, 579 U.S. 211 (2016); *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1 (2020)).

### III. Both *Loper Bright* and *Ohio v. EPA* Protect Stability and Predictability in the Administrative State.

In overruling *Chevron*, the Supreme Court in *Loper Bright* emphasized the importance of stability in the law as it impacts regulated parties. A major problem with *Chevron* deference was the way it promoted regulatory whiplash. The Supreme Court explained that so long as the agency could find a statutory ambiguity, *Chevron* provided the agency with "a license . . . to change positions as much as it likes," with only the APA's prohibition on unexplained inconsistencies as a check. *Loper Bright*, 144 S. Ct. at 2272. *Chevron* required courts to defer to agency flip-flops on the meaning of relevant statutes, so long as successive agency interpretations (no matter how contradictory) remained within an ill-defined zone of ambiguity. As the Court explained, this capacious authority "foster[ed] unwarranted instability in the law, leaving those attempting to plan around agency action in an eternal fog of uncertainty." *Id.*

Rigorous arbitrary and capricious review, as the Supreme Court applied in *Ohio v. EPA*, is also important to prevent this kind of regulatory uncertainty. When an agency abruptly changes its position, courts must ensure that the agency is doing so based on reasoned decisionmaking. An agency may of course change its policy preference, but if the agency also

13

changes its view of critical facts or fails to account for serious reliance interests, a more detailed justification is necessary to withstand challenge. And demanding strict adherence to that requirement is especially important when the change destabilizes the law and increases regulatory burdens on the public.

Enforcing these stability-enhancing requirements of administrative law is essential to upholding the rule of law and protecting the rights of American businesses. The Tax Court's deferential approach under *Chevron* allowed the IRS to depart from the Supreme Court's decision in *First Security* and to embrace an agency statutory interpretation at odds with the statutory interpretation embraced by two federal courts of appeals. *See* App. 3M Opening Br. 24–31 (discussing *First Security*, 405 U.S. 394; *Texaco v. Comm'r*, 98 F.3d 825 (5th Cir. 1996); *Procter & Gamble Co. v. Comm'r*, 961 F.2d 1255 (6th Cir. 1992)). The IRS's rule, moreover, is a textbook example of how to flunk arbitrary and capricious review under the APA. The rule changed the IRS's prior interpretation without providing sufficient reasoning, responding to significant comments in the record, or addressing a critical problem with changing such position.

Accordingly, the Tax Court erred in upholding the IRS's rule, and this Court should reverse that decision.

## CONCLUSION

For these reasons, the Tax Court's decision should be reversed.

Respectfully submitted,

October 2, 2024

/s/ Christopher J. Walker

Tyler S. Badgley
Maria C. Monaghan
U.S. CHAMBER
LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

Christopher J. Walker
  *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
christopher.j.walker@gmail.com
  **\*** *Institutional affiliation is provided for identification purposes only. Professor Walker is Of Counsel and Consultant at the U.S. Chamber Litigation Center.*

*Counsel for* Amicus Curiae

15

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the Court's September 17, 2024, order for supplemental briefing and with the type-volume limitation of <u>Federal Rule of Appellate Procedure 29(a)(5)</u> because it contains 2,836 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I further certify that this brief complies with the typeface requirements of <u>Federal Rule of Appellate Procedure 32(a)(5)</u> and the type style requirements of <u>Federal Rule of Appellate Procedure 32(a)(6)</u> because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

October 2, 2024

/s/ Christopher J. Walker
Christopher J. Walker
 *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
christopher.j.walker@gmail.com

## CERTIFICATE OF SERVICE

I certify that on the date indicated below, I filed the forgoing *amicus curiae* brief using this Court's Appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

October 2, 2024

/s/ Christopher J. Walker
Christopher J. Walker
  *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
christopher.j.walker@gmail.com